

Modified by 70 A

# THE ATTORNEY GENERAL
## OF TEXAS

AUSTIN 11, TEXAS

WILL WILSON
ATTORNEY GENERAL

July 31, 1957

Honorable E. C. Grindstaff
District Attorney
119th Judicial District
County Courthouse
San Angelo, Texas

Opinion No. WW-70

Re: Effect of various provisions
of Senate Bill 237, Acts
55th Leg., 1957, ch. 228,
p. 477

Dear Mr. Grindstaff:

You have submitted several questions in connection with the above-captioned matter which we will consider seriatim.

Your first question is whether the County Clerk has discretion in fixing the amount of the fees he receives for official services or whether it would be necessary for the Commissioner's Court to authorize the Clerk to set the amount of fees.

Senate Bill 237 amends Article 3930, Vernon's Civil Statutes, and provides as follows:

"Clerks of the County Court may
receive not to exceed the following fees:. . ."

Prior to this amendment, Article 3930 provided as follows:

"Clerks of the County Court shall
receive the following fees:. . ."

At first reading it might appear that the Legislature was attempting to give the County Clerk discretion as to the amount of the fees up to a certain maximum limit. However, we have concluded that this is not the proper interpretation to place on this portion of the statute, because such an interpretation would render the Act unconstitutional.

Section 20 of Article V of the Texas Constitution reads, in part, as follows:

"There shall be elected for each
county, by the qualified voters, a
County Clerk who shall hold his office

> for four years, who shall be Clerk of
> the County and Commissioners' Courts
> and recorder of the county, whose duties,
> perquisites and fees of office shall be
> prescribed by the Legislature. . ."
> (Emphasis supplied throughout.)

Under this provision, it is clearly the duty of the Legislature to prescribe the fees; and this duty cannot be delegated by the Legislature to the Clerks. It is obvious that there would be such delegation if it were left in the Clerk's discretion to determine an amount anywhere from zero to the maximum stated amount.

No rule of constitutional law is more firmly established than that rule which declares where possible statutes will be construed consistently with the directives of the Constitution and that if one interpretation would invalidate an act or a part thereof and another would uphold it the latter interpretation will be made. 9 Tex. Jur. 484, Constitutional Law, Sec. 63.

Numerous cases have held that the word "may" may be construed to be mandatory, that is, as the equivalent of "must" or "shall", when such construction is consistent with the evident purpose of the statute. 26A Words and Phrases 386-522; Smith v. Curtis, 223 S.W.2d 712, 714 (Tex.Civ.App. 1949). It is quite reasonable to assume that the Legislature intended that the County Clerk must receive not more than the stated amount. We do not think it was the intent of the Legislature that the Clerk could in some instances receive no fee at all and in others varying fees ranging to the maximum stated fee. The caption of Senate Bill 237 states:

> "An Act to amend Article 3930 of
> the Revised Civil Statutes of Texas,
> 1925, . . .relating to fees which the
> clerks of the County Courts shall
> receive for their services; . . ."

Thus it is evident that the Legislature intended that the County Clerks should receive fees for their services. This is inconsistent with construing the provision in question as reposing discretion in the Clerk as to whether he charge any fee at all.

Likewise the emergency clause of Senate Bill 237 provides, in part, as follows:

"The fact that the Officers' Salary
Funds in most of the counties of Texas
are inadequate and insufficient to take
care of the expenses of the officers
affected hereby, thereby placing an
extra burden on the already overburdened
general funds of such counties, creates
an emergency. . ."

If Officers' Salary Funds are already inadequate, it
is evident that the Legislature intended to remedy this situa-
tion, rather than permit a reduction in permissible fees. In
this connection, we call your attention to the fact that in
most instances the amount of each fee has been increased by
this latest legislative action. You are therefore advised
that County Clerks have no discretion as to the amount of fees
but must charge the amount stated in Senate Bill 237.

With regard to the fee that can be charged for filing
a notarial bond and qualifying a notary, you asked whether
when the oath is administered by another official qualified to
do so before the bond is filed with the County Clerk the fee
would be less than $2.00. You state that the present charge
for filing and approving a notary bond is now $1.60; One
Dollar for the Commission (paid to Secretary of State), Fifty
Cents for approving the bond and Ten Cents for filing.

The bill contemplates that the County Clerk will
perform all the official duties that are to be performed at
the County Courthouse level in connection with an application
for a notary public's commission; for it has set one maximum
fee for "Approving and filing a notarial bond and qualifying
notary public." The maximum fee which may be charged by a
County Clerk in connection with a notary public's commission
is $3.00; $1.00 for the commission (collected for the Secre-
tary of State) and $2.00 for "Approving and filing notarial
bond and qualifying for a notary public."

The next question is whether the ten cents charge
which the bill states shall be made for indexing each name
on any instrument required or permitted to be filed, recorded
or registered in the office of the County Clerk is intended
to be an additional charge in excess of the recording and
filing fee. You are advised that this fee is in addition to
the other fees set for recording or filing.

You then ask should two charges be made if the
grantees in a deed were John Doe and wife, Mary Doe, and if
it were indexed John Doe, et ux. The ten cent fee is for

each name indexed. John Doe and wife, Mary Doe, should be indexed separately rather than as John Doe, et ux.

Your final question is as to the proper fee to be charged for issuing and recording a marriage license. Senate Bill 237 lists this fee as $3.00. You state that you now charge $2.50 - $2.00 for issuing or recording and $.50 for certification as required by Article 4612-a, V.C.S. You ask whether under the new fees which increases the certificate fee to $1.00 your total fee would be $4.00.

The fee for "Issuing and recording marriage license" is $2.00. The certificate required by Article 4604d, V.C.S. (formerly Article 4612a), in connection with a premarital examination for syphilis, "shall be on a form prepared and provided by the State Board of Health." This is not a certificate certifying "to any fact or facts contained in the records of" the office of the County Clerk. No fee should be charged in connection with the furnishing of this certificate, for the County Clerk's records do not contain the information needed in this certificate. For the filing of the certificate the County Clerk may charge a fee of $.25. The total maximum fee, then, which may be charged in connection with the issuance and recordation of a marriage license and filing the above certificate is $3.25.

## SUMMARY

County Clerks have no discretion as to the amount of fees to be charged for official services, but must charge the amounts stated in Senate Bill 237, Acts 55th Leg., 1957, ch. 228, p. 477. The fee which must be charged by a County Clerk in connection with a notary public's commission is $3.00; $1.00 for the commission (collected for the Secretary of State) and $2.00 for approving and filing a notarial bond and qualifying a notary public. The name of each grantee in a deed should be indexed separately and a ten cent fee is required for indexing

each name. The total fee to be charged in connection with the issuance and recordation of a marriage license and filing certificate is $3.25.

Yours very truly,

WILL WILSON
Attorney General

By *Marietta McGregor Payne*
Marietta McGregor Payne
Assistant

MMP:gs

APPROVED:

OPINION COMMITTEE
H. Grady Chandler, Chairman

REVIEWED FOR THE ATTORNEY GENERAL
BY:
Geo. P. Blackburn